IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–00409-REB-MEH

MALIBU MEDIA, L.L.C.

     Plaintiff,

v.

JOHN DOE #7

     Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS
DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS**

---

     Defendant John Doe #7 ("Defendant") by his attorneys, hereby responds to Plaintiff's

motion to dismiss Defendant/Counter-Plaintiff's counterclaims and states as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

     Plaintiff Malibu Media is in the process of pursuing a lawsuit against Defendant John

Doe #7 for copyright infringement of a work owned by Plaintiff. [Dkt #1] Defendant Doe

responded by filing several defenses and counter-claims against Plaintiff for a declaratory

judgment of non-infringement and abuse of process. [Dkt #75]  Plaintiff motioned on September

10, 2012, requesting that the Court dismiss both of Defendant's counterclaims. [Dkt #77]

Defendant's response to Plaintiff's motion is enclosed herein.

## II. LEGAL STANDARD

     Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." However, conclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

motion to dismiss." *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Recently, the Supreme Court clarified this pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1955, 173 L.Ed.2d 868 (2009): to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U .S. at 570. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id*.

The Court explained two principles underlying the new standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," Iqbal, 129 S.Ct. at 1949, and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," id. at 1950. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

### III. ARGUMENT

**A. Defendant/Counter-Plaintiff does not fail to state a claim for a declaratory judgment that Defendant is not liable to Plaintiff for Copyright Infringement**

This claim seeks relief above and beyond anything sought in the affirmative defenses and/or any of the other counts of the Counterclaim. Specifically, it seeks a finding that Defendant did not infringe – that is, that Defendant did not engage in a volitional act of infringement – and that Defendant is not liable -- jointly or severally -- to Plaintiff or any other party for copyright infringement.  It also seeks an affirmative finding from the Court that Plaintiff has acted

2

improperly (unclean hands, failure to mitigate damages, improperly seeking multiple recoveries, etc.) which affirmative findings would not necessarily be made in the event that Defendant were to be successful in simply defending this suit against Plaintiff.

The declaratory judgment claim is necessary because it raises issues different from, and that may not necessarily be resolved by, a decision on the Complaint.  The Court may properly reject the Complaint based on failure of proof on any single element in Plaintiff's claim, or based on any one of the affirmative defenses, leaving unresolved the other issues on which Defendant has requested a declaration. This includes issues such as lack of a volitional act, Rule 11 obligations of the parties, and support for other counterclaims.  As the Supreme Court has recognized in similar circumstances, a declaratory judgment claim must survive, even if an affirmative defense raises the same issues, since "[a]n unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for declaratory judgment." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).

To maintain his Declaratory Judgment counterclaim, Defendant need only file an "appropriate pleading" that establishes (1) jurisdiction and (2) the existence of an actual case or controversy between parties having adverse legal interests. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 359 (1961).  Defendant has done this in the counterclaim.

There is no universal rule for compliance with the case or controversy requirement; rather, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); quoted and reaffirmed in *MedImmune, Inc. v. Genentech, Inc.* 549 U.S. 118, 127 S. Ct. 764, 771-72 (2007). As the

Supreme Court explained in *Bell v. Hood*, 327 U.S. 678, 682 (1946), subject matter "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."  Defendant need only show that the facts alleged, if proved, would confer standing -- which it has. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). "At the pleading stage... we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (reversing decision denying summary judgment for lack of standing and subject matter jurisdiction)). The well-pleaded allegations in the Counterclaim are more than sufficient to show subject matter jurisdiction. Indeed, those allegations would easily meet the standards articulated for Rule 12(b)(6) motions—and not previously applied to motions under Rule 12(b)(1)—that require only factual allegations establishing a plausible basis for the claim. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The facts alleged go much farther than mere plausibility or the standards under Rule 11.

In fact, the Counterclaim goes far beyond the Complaint both in the issues that it raises and the relief that it seeks. In an effort to obtain a definitive ruling on the legality of Plaintiff's conduct going forward, Defendant specifically seeks a declaration that there was no volitional act of copying; that Plaintiff has failed to mitigate; that Plaintiff is attempting to receive double recovery; that Plaintiff is not jointly and severally liable and finally, that no infringement has occurred "based on the circumstances described above."[1] These are issues distinct from the subject of the Complaint, and only by such a declaration can all claims and controversies be resolved. *Broadview Chem. Corp. v. Loctite Corp.*, 474 F.2d 1391, 1393 (2d Cir. 1973) ("It is

---

[1] This list is not exhaustive but merely exemplary.

undisputed that the principal purpose of a declaratory judgment is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy.").

Moreover, Plaintiff is simply mistaken in asserting that every legal and factual issue raised in the Counterclaim will be fully resolved by the adjudication of its original Complaint.  A finding of non-infringement will not necessarily adjudicate the issues presented in the Counterclaim, any one of which may be dispositive of the Complaint, leaving the other issues unresolved absent this declaratory judgment count. Failure to resolve these issues, even after a finding of non-infringement, leaves Defendant exposed. For example, Plaintiff has asserted Defendant is jointly and severally liability with tens, hundreds or potentially even thousands of other parties who could seek contribution at some unknown point in the future. Even a covenant not to sue unilaterally executed by Plaintiff would not alleviate this potential, significant exposure among others.

Additionally, a declaratory judgment is the appropriate relief in just this context, where a party needs determination of particular rights that might otherwise go unresolved.  Defendant is innocent – not merely "not guilty" – of all the charges brought against him by Plaintiff, and he seeks a declaration from this Court confirming as much.  While "[o]ne defendant exonerated from infringement may be content with such adjudication -- another may not… [since the] mere exoneration from infringement does not always meet the necessities of a wrongfully accused defendant." *Dominion Elec. Mfg. Co v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174 (6th Cir. 1942) ("mere dismissal of a plaintiff's bill does not always adjudicate every aspect of the controversy or give the defendant all the relief to which he may be entitled"); *see also MRSI Int'l, Inc. v. Bluespan, Inc.*, 2006 U.S. Dist. LEXIS 68891, at **3-7 (D. Utah Sep. 21, 2006) (refusing to dismiss counterclaims as duplicative of underlying claims or affirmative defenses because the

court could potentially adjudicate the underlying claims without reaching issues in declaratory relief claim); *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381 (D. Kan. 1997) (rejecting as "without merit" motion to dismiss counterclaims as redundant to underlying claim). As the Court noted in *Blackmer v. Shadow Creek Ranch Dev. Co.*, 2007 U.S. Dist. Lexis 99224, at **4-5 (S.D. Tex. June 26, 2007), even where there was substantial overlap between claims and defenses, there is a "qualitative difference between merely prevailing in Plaintiff's lawsuit, and receiving an affirmative declaration of rights."

Assuming *arguendo* that Defendant had not counterclaimed and only raised his affirmative defenses, and assuming further that Defendant prevailed at trial, a judgment in his favor would most likely only dismiss Plaintiff's causes of action against him. Such a judgment would do nothing to assist in repairing Defendant's damaged reputation and rebuild his standing in the community and the business world. It would make no findings of fact regarding Plaintiff's conduct or Defendant's innocence. A declaratory judgment that states that Defendant has not infringed Plaintiff's copyrights and that Plaintiff never had any case against him would settle the legal issues between the parties definitively, would assist other similarly situated plaintiffs and defendants with a precedential legal ruling, and would provide a powerful tool for Defendant to begin to recover his damaged reputation.

## B. Defendant/Counter-Plaintiff provides sufficient facts to support a claim for abuse of process

First, upon information and belief, Plaintiff has entered into an illegal and barratrous and/or champertous financial arrangement with attorneys and with a significantly financially interested technology company whereby: 1) the technology company collects Internet Protocol ("IP") addresses off the internet; 2) the attorneys file lawsuits with that information, misrepresenting to the court that the owner of the IP address undoubtedly and without question

IS the infringer; 3) the pornography company and/or the attorney employs third party

"negotiators" to harass and pressure John Doe defendants into settling for thousands of dollars;

and 4) the pornography company and their attorneys remain willfully blind to significant

exculpatory evidence as well as serious errors in their own IP collection methods.

A more detailed listing of facts in support of Defendant's claim follows:

Barratry, Champerty, Maintenance and Officious Intermeddling: Defendant has alleged that

Plaintiff has engaged in an illegal and fraudulent barratrous relationship as well as engaging in

officious intermeddling. In addition, while the common law torts of maintenance and champerty

no longer exist in Colorado, *Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952), such common

law claims are still recognized in other jurisdictions and as such, Plaintiff seeks a good faith

extension of the law in this area.  In particular, a "champertous agreement is one in which a

person without interest in another's litigation undertakes to carry on the litigation at his own

expense, in whole or in part, in consideration of receiving, in the event of success, a part of the

proceeds of the litigation." *Schwartz v. Eliades*, 113 Nev. 586, 589-590 (Nev. 1997) citing

*Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 603 (5th Cir. 1982), cert. dismissed, 458 U.S.

1122, 73 L. Ed. 2d 1394, 103 S. Ct. 5 (1982).

Bad Faith Pleading:  Although Plaintiff knew at the time of the filing of its Complaint –

both in this matter and in all of its cases across the country – that the IP address it collected gives

a code to a device, not the identity of a human being, it nevertheless falsely and knowingly

represented to this Court and other courts that the IP address would definitively reveal the

infringer. In Plaintiff's Motion For Leave to Serve Third Party Subpoenas Prior to a Rule 26(f)

Conference, Plaintiff asserted: "Since Defendants used the Internet to commit their infringement,

Plaintiff only knows Defendants by their Internet Protocol ("IP") addresses." (Malibu Media v.

John Does 1-30, 12-cv-402-WYD, Motion at p. 1). At that point, the identities of those John Doe defendants was, by definition, unknown to Plaintiff, so Plaintiff could not in truthfulness represent to the Court anything regarding the volitional conduct of those individuals.

The idea that an IP address reveals an infringer has been universally rejected by the courts. *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *9 (E.D.N.Y. 2012); *Third Degree Films v. Doe*, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011). Plaintiff has been specifically warned by various Federal Courts that "there is a reasonable likelihood that [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012). Indeed, as one judge observed in another identical Bittorrent case, "Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material." Digital Sins, Inc. v. Does 1-176, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30,2012); see also *Hard Drive Productions, Inc. v. Does 1-130*, 2011 WL 553960, at *2 (N.D. Cal., 2011) ("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); *Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 5117424, at *2 (N.D. Cal. 2011).

Finally, although Defendant is being asked to litigate the question of whether the film "Tiffany Sex with a Supermodel" was infringed by Defendant via a Bit Torrent download, Plaintiff is also asking for damages as related to several alleged acts of infringement that are not part of the Original or Amended Complaint. The settlement team who Defense counsel is asked to confer with regarding settlement negotiations is requesting that Defendant settle not just for the alleged infringement of the film that is the source of this lawsuit, but several other works owned by Plaintiff which substantially increase the settlement amount Plaintiff is asking.  None

of these works are pled in the original or Amended Complaint, but Plaintiff will settle in full including these works if Defendant opts to settle with Plaintiff.  Plaintiff has provided no evidence to support Defendant's alleged infringement involving any of the works cited by Plaintiff at any time in the proceedings outside of a listing of an IP address and a date. Failing to plead sufficient facts related to a claim in the pleadings but requesting damages therefrom in order to settle the claims alleged by Plaintiff is abuse of process.

Plaintiff had a duty to engage in pre-filing inquiry, once it obtained the identifying information of the John Does, in order to determine whether they, as the subscribers who were associated with the IP address, were in fact the infringers and not merely victims of some other person's misconduct. Despite these clear directives, Plaintiff filed its pleadings – and Plaintiff's attorney signed them – knowing that the IP addresses it had proved nothing as far as Defendant's liability, and that in fact, nearly, if not more than, one-third of the individuals Plaintiff was suing did not download the pornographic works in question.  Despite this knowledge, Plaintiff alleges as fact that Defendant engaged in "willful" and "intentional" violation of Plaintiff's copyright. (Complaint, ¶¶ 1-4).

Failure To Conduct Pre-Filing Inquiry:  Plaintiff has already been warned by one court that it has engaged in a pattern of litigation behavior that was inappropriate, abusive and unfair. Judge Brown in *In Re BitTorrent Adult Film Copyright Infringement Cases*, *supra*, stated: "[P]laintiffs have employed abusive litigation tactics to extract settlements from John Doe defendants." 2012 U.S. Dist. LEXIS 61447 at *19 (E.D.N.Y. 2012)[2].  The Court even identified instances where this Plaintiff was offered, and refused, the opportunity to conduct Rule 11 pre-filing investigation:  "In this case, John Doe #16 offered the plaintiff "unfettered access" to his

---

[2] Plaintiff Malibu Media L.L.C. was one of the plaintiffs in that case.

computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive for the plaintiff" *Id*. at 28 (internal quotations omitted). The I*n Re Bittorrent* court went so far as to describe Plaintiff's justifications for such tactics as "rambling" and "farcical." *Id*. at n7.

Plaintiff has been specifically warned by other Courts that proceeding against an incorrectly identified Defendant -- as is the case here -- could result in the imposition of sanctions. See *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 110668, *6-7 (M.D. Fla. Aug. 7, 2012) (The Plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed. R. Civ. P., if the John Doe defendant is incorrectly identified.) See also *Hard Drive Productions v. Does 1-48*, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie).

Further, as specifically pled, consistent with Plaintiff's business model, such intimidation tactics are meant to extend to the hundreds of potential named and unnamed litigants Plaintiff has already sued and will continue to sue, in order to encourage quick settlements. Such actions support a claim of abuse of process.

Abusive Litigation Tactics in Colorado:  The same litigation tactics that the New York court condemned as "inappropriate, abusive and unfair," Plaintiff has engaged in here in Colorado.  Defendant has offered unfettered access to Defendant's computers and electronic devices to demonstrate to Plaintiff that he could not have contributed to the alleged infringing activity that is the source of this lawsuit. Defendant has also offered to cooperate with any investigation into his neighbors and who might be responsible out of the individuals located

nearby. Such behavior by Plaintiff supports Defendant's allegation that it is Plaintiff's intention to refuse any offer of exculpatory evidence while threatening to expose defendants' identities in order to improperly leverage settlement negotiations. Instead, Defendant has been instructed to fight it as is or settle under the terms proposed by Plaintiff. *Sunlust Pictures LLC v. Doe*, 2012 U.S.Dist. LEXIS 121368 (N.D. Ill. Aug. 27, 2012).  Thus, Defendant has not alleged some fanciful, theoretical model of abuse, but has offered facts in support of Plaintiff's pattern of abuse, not only across the nation but specifically here in Colorado. Plaintiff's goal appears to remain willfully blind to all exculpatory evidence, which extend to Defendant, in order to leverage quick and profitable settlements.

 Plaintiff And Its Attorneys Have Demonstrated Ulterior Motives Behind This Suit And Other Suits:  Despite the fact that Plaintiff and its counsel is knowledgeable that an IP address does not necessarily represent an individual and does not, in fact, lead inevitably to the infringer, Plaintiff acts as if that is the case without doing any independent investigation or discovery; and in fact, as noted above, affirmatively refuses to accept any exculpatory evidence from the individuals it has actually sued.  This willful ignorance as to a defendant's guilt or innocence, where Plaintiff uses litigation as a weapon to intimidate innocent individuals into settling groundless claims, demonstrates an ulterior motive which is evidence of an abuse of process.

 In addition, Defendant has stated at some point that at least one ulterior motive behind this suit is part of Plaintiff's overall litigation business model: namely, that Defendant's case was one of a handful of token lawsuits brought against named individuals in order to provide a semblance of legitimacy and to act as a threat to other Doe defendants who will not settle. Indeed, Plaintiff in this jurisdiction only filed a handful of individual lawsuits only after being issued an order to Show cause by the Court for failure to prosecute such cases. Bringing lawsuit

based on false and misleading pleadings based on flawed evidence against likely innocent individuals and shirking all continuing obligations solely to insulate against the liabilities of Defendant's counterclaims is clearly an inappropriate ulterior motive.  Such actions support a claim of abuse of process.

Joinder of Dozens of Does:  Plaintiff sued dozens of Doe defendants at once in every case, despite the fact that it had no evidence to properly join these individuals.  As a result, Plaintiff has saved hundreds of thousands of dollars in filing fees in potential violation of federal law. 31 U.S.C. 3729; (First Amended Answer & Counterclaim ¶149).  As noted by Judge Martinez in an Order in *Malibu Media v. Felitti et al*, there is no "undue prejudice" in requiring Plaintiff to pay a separate filing fee for each defendant; rather, "payment of a separate filing fee for its claim against each Defendant properly balances the Plaintiff's right to protect its copyright with the Court's interest in cost-efficient adjudication of cases." Order Finding Joinder Improper, No. 1:12-cv-1522-WJM (Dist. Colo. July 25, 2012). Moreover, at least one other court has expressed concerns mass Bit Torrent litigation lumping together multiple defendants into one lawsuit:  "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them." *K-Beech, Inc. v. John Does 1-85*, Memorandum Order, No. 3:11-cv-469-JAG (E.D.Va. Oct. 5, 2011).  These actions support a claim for abuse of process.

Financial Inability To Pursue Litigation In Good Faith:  Defendant has alleged that Plaintiff knew at the time of filing that it could not in good faith litigate even a fraction of the lawsuits it has commenced.  This is due to several factors:  for one thing, Plaintiff knew that it could not afford the potential financial exposure due to the fee-shifting provisions of the Copyright Act; for another, Plaintiff's counsel did not have the time or the resources to diligently

litigate each and every claim.  As such, at the time of filing each lawsuit against Doe defendants, Plaintiff knew that its goal was only to obtain identifying information, forward that information to a third party which provides these harassing "settlement negotiation" services[3], and to obtain money from the Doe defendants, regardless of whether they had infringed Plaintiff's copyrights or not.  See *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D.Va. Oct. 5, 2011) ("Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation") and *Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5, 2011) (same); cf. *Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5, 2011)(same).

Summary:  Defendant makes a good faith argument, with a good faith belief, that once a trier of fact has reviewed all of Plaintiff's conduct in this case[4], it will find that Plaintiff has abused the privilege of litigating in the Federal court system. However, under *Zaldivar*, the question is not whether or not Defendant will prevail at trial on this claim, but whether the Counterclaim in good faith "states an arguable claim." Respectfully, on the face of the First Amended Answer and Counterclaim, it is clear that Defendant has stated one or more arguable claims.

## CONCLUSION

In his Counterclaim, Defendant has stated more than one claim upon which relief may be granted sufficient to survive a motion to dismiss.  Defendant has stated counterclaims against Plaintiff which are all either warranted by existing law or supported by a reasonable non-

---

[3]    In addition to (i) the use of the infamous Miami-based "settlement negotiator" company, which Plaintiff refuses to even acknowledge, there is ample evidence of other "abusive litigation tactics" employed by Malibu Media: (ii) using the subpoena process to collect on claims that go beyond the complaint; (iii) willfully violating courts' notice of related case rules; (iv) seeking John Doe phone numbers and email addresses despite a court order telling plaintiff not to do so; and (v) misrepresenting the range of potential damages. Such facts support a claim of an abuse of process.

frivolous argument for extending, modifying, or reversing existing law, or for establishing new law. The facts upon which Defendant relies are all in the public domain to be found by anyone using the internet.

**WHEREFORE**, Defendant respectfully requests the Court deny Plaintiff's motion to dismiss Defendant's counterclaims in its entirety as having been addressed by these motion papers.

## The Court Should Deny the Motion Due to Plaintiff's counsel's lack of compliance with Local Rule 7.1A

Plaintiff's motion was filed without any attempt by Plaintiff to give Defense counsel a meaningful opportunity to confer about unnecessary issues raised by the motion. On September 10, 2012, while Defense counsel was available at his office, Plaintiff's counsel never contacted him about the present motion, nor ever left a voice mail on his telephone.  In spite of no explanation of the issues, the present motion was e-filed after business hours.

Although the motion may have been composed, edited, and revised over several days by Plaintiff's counsel, no real effort to "meet and confer" was made to give the undersigned counsel an opportunity to resolve these issues.  Failing to contact defense counsel should not be condoned as constituting substantial compliance with Local Rule 7.1A.

One of the purposes of Local Rule 7.1A is to encourage communication between opposing counsels, and to encourage civility and professionalism between the parties.  Plaintiff's counsel has not met the requirements and purposes of Rule 7.1A when they simply filed the motion to strike without contacting Defense counsel.  The failure to comply with Rule 7.1A is sufficient alone to warrant a denial of the motion to strike. *Echostar Communcations Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998). Accordingly, this Court should use its discretion, and therefore, deny Plaintiff's motion for failing to comply with Local Rule 7.1A.

## Certificate of Compliance with D.C. Colo. L. Civ. R. 7.1

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel for Defendant has attempted to confer with Plaintiff's counsel concerning the relief Defendant seeks herein.  Plaintiff's counsel opposes the present motion.

DATED: September 24, 2012

Respectfully submitted,
JOHN DOE #7

By: _____

John A. Arsenault (CO Bar # 41327)
WESSELS & ARSENAULT, L.L.C.
1333 W. 120th Ave. Suite 302
Westminster, CO 80234
Telephone: 303-459-7898
Facsimile: 888-317-8582
john.arsenault@frontrangelegalservices.com
*Attorney for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS** was sent via first-class mail or via the CM/ECF system to the following:

JASON KOTZKER
KOTZKER LAW GROUP
10268 Royal Eagle Street
Highlands Ranch, CO 80129

**DATED**:  September 24, 2012

By: _____

John A. Arsenault (CO Bar # 41327)

WESSELS & ARSENAULT, L.L.C.
1333 W. 120th Ave. Suite 302
Westminster, CO 80234
Telephone: 303-459-7898
Facsimile: 888-317-8582
john.arsenault@frontrangelegalservices.com
*Attorney for the Defendant*